**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO: 4:23-CV-4521 |
| ALTERA EAST HOUSTON, LLC and | § | |
| AURUM PROPERTY PARTNERS, LLC | § | |
| | § | |
| Defendants. | § | |

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff FEDERAL INSURANCE COMPANY ("Federal") and files this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201(a) stating as follows:

### I.     INTRODUCTION

1.     This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Plaintiffs seek a determination of the parties' rights and obligations under two insurance policies issued to Altera East Houston, LLC ("Altera") as the Named Insured, which include: (1) a commercial general liability policy issued by Federal and bearing Policy No. 3607-26-62DAL (the "Primary Policy") and (2) a commercial excess and umbrella policy issued by Federal and bearing Policy No. 7819-23-50 (the "Excess Policy" and, together with the Primary Policy, the "Federal Policies"). True and correct copies of Policy Nos. 3607-26-62DAL and 7819-23-50, with premiums redacted, are attached as Exhibits A and B, respectively.

2.     A dispute exists between the Federal and Altera and Aurum Property Partners, LLC ("Aurum" and together with Altera, the "Defendants") regarding whether Federal is obligated

under the terms and conditions of the Federal Policies to defend and indemnify Defendants in connection with two consolidated lawsuits filed by the thirteen (13) claimants ("Claimants") pending in the 127th Judicial District Court for the County of Harris, Texas against Altera, Aurum and other defendants under cause number 2022-68700 (the "Underlying Lawsuit").

3.      The defendants in the Underlying Lawsuit are entities that owned, managed or performed janitorial services at a building located at 1140 Westmont, Houston, Texas 77015 (the "Building") where the incident made the basis of the Underlying Lawsuit occurred. Claimants asserted causes of action for premises liability and negligence against Altera and Aurum, as the owner and property manager of the Building, respectively.

4.      The Claimants in the Underlying Lawsuit were working in the Building and were allegedly exposed to and/or consumed the infected urine and other bodily fluids of underlying defendant Lucio Diaz ("Diaz"). More specifically, on September 26, 2022, while working as a janitor at the Building, Diaz was caught on a hidden camera inserting his genitals into a water bottle left by an employee at her desk overnight. It is alleged that Diaz had been doing this for an unknown amount of time prior to being caught, and that Diaz allegedly transmitted a sexually transmitted disease ("STD") (specifically, herpes) to all of the Plaintiffs via contaminated water bottles.

5.      Federal issued the Primary Policy to Altera for the policy period of December 31, 2021 to December 31, 2021. The Primary Policy's Insuring Agreement covers damages that "the **insured**[1] becomes legally obligated to pay by reason of liability…for **bodily injury** caused by an occurrence to which this coverage applies. The coverage applies only to such **bodily injury** that occurs during the policy period." The Primary Policy defines "occurrence" as an "accident,

---

[1] Terms in **bold** are defined terms in the Federal Policies.

including continuous or repeated exposure to substantially the same general harmful conditions."

6.      The Primary Policy includes Biological Agent exclusions that exclude coverage for, in relevant part, "any damages … arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **biological agents**. It also includes Pollution exclusions that exclude coverage for, in relevant part, any "**bodily injury** … arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**[,]" which is defined to include contaminants and irritants". Both of these exclusions apply to preclude coverage for the claims against Altera and Aurum in the Underlying Lawsuit.

7.      Federal also issued the Excess Policy to Altera for the policy period of December 31, 2021 to December 31, 2022. The Excess Policy requires Federal to pay the "**loss** to which this coverage applies, which exceeds the applicable **underlying limits**." The Excess Policy follows the terms and conditions of the **underlying insurance**, which in this case is the Primary Policy, unless a term or condition contained in the Excess Policy differs from any term in the **underlying insurance** or is not contained in the **underlying insurance.** Significant here, the Excess Policy extends insured status to any person who qualifies as an **insured** under the Primary Policy, but not beyond the extent of any limitation imposed under any contract or agreement. Like the Primary Policy, the Excess Policy similarly includes Biological Agents exclusions and Pollution exclusions that preclude coverage for the claims against Altera and Aurum in the Underlying Lawsuit.

8.      Accordingly, Federal owes no duty to defend or indemnify Altera or Aurum against the claims in the Underlying Lawsuit under the Federal Policies.

## II.      THE PARTIES

9.      Federal is, and at all times relevant hereto was, an insurance company organized and existing under the law of Indiana, with its principal place of business in Whitehouse Station,

New Jersey.

10.     Defendant Altera is, and at all times relevant hereto was, a Texas Limited Liability Company with its principal place of business in Texas.  Diversity of citizenship, for purposes of limited liability companies, is determined by the citizenship of their members. The managing member of Altera is Altera VTR Holdco Borrower, LLC, a Delaware LLC which is managed by Terry Quinn, a Texas resident. Altera can be served by serving its registered agent, Terry Quinn, at 5910 N Central Expressway, Suite 1360, Dallas, Texas 75206, or wherever he may be found.

11.     Defendant Aurum is, and at all times relevant hereto was, a Florida limited liability company doing business in the State of Texas. Diversity of citizenship, for purposes of limited liability companies, is determined by the citizenship of their members. The managing member of Aurum is Peter Applefield, a Florida citizen. Aurum can be served by serving its registered agent, Peter J. Applefield, at 319 Clematis Street, Suite 608, West Palm Beach, Florida, 33401, or wherever he may be found.

### III.   JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states of the United States.

13.     Specifically, with respect to the amount in controversy, this matter involves liability insurance coverage for an Underlying Lawsuit wherein the Claimants assert claims for economic damages in excess of $1,000,000.

14.     With respect to diversity of citizenship, Plaintiff Federal is a citizen of both Indiana and New Jersey, Defendant Altera is a citizen of Texas and Defendant Aurum is a citizen of Florida. Thus, complete diversity exists between Plaintiff and Defendants.

15.     The Court has general personal jurisdiction over Altera because it is a citizen of the State of Texas.

16.     The Court has general personal jurisdiction over Aurum because it has substantial contacts with the State of Texas.

17.     An actual controversy exists between Plaintiff and Defendants, and this Court may declare the rights and other legal relations of the parties pursuant to 28 U.S.C. § 2201(a).

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.     FACTUAL BACKGROUND

### A.     The Primary Policy.

19.     Federal issued the Primary Policy to Altera for the policy period of December 31, 2021 to December 31, 2022. The Primary Policy includes a General Liability Coverage Part with a $1 million each occurrence limit.

20.     Altera qualifies as a named **insured** under the Primary Policy.

21.     As Aurum was Altera's property management company for the Building, Aurum potentially qualifies as an **insured** via the Primary Policy's Who Is An Insured provision that extends **insured** status to "organizations acting as [Altera's] real estate managers …, but [Aurum would only be an] **insured** only with respect to their duties as [Altera's] real estate managers."

22.     The relevant insuring agreement of the Bodily Injury and Property Damage Liability Coverage covers, in relevant part, "damages that the **insured** becomes legally obligated to pay by reason of liability: imposed by law; or assumed in an **insured contract**, for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies." But, the **bodily injury** or **property damage** must also occur during the policy period.

23.     The Primary Policy includes a Biological Agents Exclusion that excludes "damages, loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **biological agents**."

24.     The Primary Policy also includes a Total Pollution Exclusion that excludes "**bodily injury** … arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants.**" The Primary Policy defines **pollutants** to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

25.     Specifically, the Primary Policy includes the following relevant Insuring Agreement, definitions, exclusions and provisions:

> Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations and other persons or organizations qualifying as a Named **Insured** under this contract. The words "we," "us" and "our" refer to the Company providing this insurance.

> In addition to the Named **Insured**, other persons or organizations may qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.

> Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

> **Coverages**

> **Bodily Injury and Property Damage Liability Coverage**

> Subject to all of the terms and conditions of this insurance, we will pay damages that the **Insured becomes legally obligated to pay by reason of liability:**

> - imposed by law; or
> - assumed in an **insured contract;**

> for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

> This coverage applies only to such **bodily injury** or **property damage** that occurs

during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury.**

Other than as provided under the Investigation, Defense and Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

***

## Definitions

***

**Bodily injury** means physical:

- injury;
- sickness; or
- disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

***

**Insured** a person or an organization qualifying as an **insured** in the Who Is An Insured section of this contract.

***

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

***

## Exclusion Endorsement

**Biological Agents, Total**

With respect to all coverage(s) under this contract:

A.    this insurance does not apply to any damages, loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **biological agents**.

B.    this insurance does not apply to any damages, loss, costs or expenses arising out of any:

1.  request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **biological agents**; or

2.  claim or proceeding by or on behalf of a governmental authority or others for damages, loss, cost or expense because of testing for, monitoring, cleaning-up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **biological agents.**

The following definition is added to this policy and replaces any similar definition contained therein.

**Biological Agents** means any:

A.   1. bacteria;
     2. mildew, mold or other fungi;
     3. other microorganisms; or
     4. mycotoxins, spores or other by-products of any of the foregoing:

B.   viruses or other pathogens (whether or not a microorganism); or

C.   colony or group of any of the foregoing.

\*\*\*

**Pollution, Total**

A.   This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants.**

B.   This insurance does not apply to any damages, loss, costs or expenses arising out of any:

1.  request, demand or order that any **insured** or others test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

2.  claim or **suit** by or on behalf of a governmental authority or others for damages, because of testing for, monitoring, cleaning-up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants.**

This exclusion applies regardless of whether or not the pollution was

accidental, expected, gradual, intended, preventable or sudden.

**B.    The Excess Policy.**

26.    Federal issued the Excess Policy to Altera for the policy period of December 31, 2021 to December 31, 2022. The Excess Policy includes Excess Follow-Form Coverage and Umbrella Coverage Parts with a $25,000,000 each occurrence and general aggregate limit.

27.    The Excess Policy contains the following relevant Insuring Agreements, definitions, exclusions and provisions:

> Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations and other persons or organizations qualifying as a Named **Insured** under this contract. The words "we," "us" and "our" refer to the Company providing this insurance.
>
> In addition to the Named **Insured**, other persons or organizations may qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.
>
> Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.
>
> **Coverage / Excess Follow-Form Coverage A**
>
> Subject to all of the terms and conditions applicable to Excess Follow-Form Coverage A, we will pay, on behalf of the **insured,** that part of **loss** to which this coverage applies, which exceeds the applicable **underlying limits.**
>
> This coverage applies only if the triggering event that must happen during the policy period of the applicable **underlying insurance** happens during the policy period of this insurance.
>
> This coverage will follow the terms and conditions of **underlying insurance** described in the Schedule Of Underlying Insurance, unless a term or condition contained in this coverage:
>
> - differs from any term or condition contained in the applicable **underlying insurance;** or
> - is not contained in the applicable **underlying insurance.**
>
> With respect to such exceptions described above, the terms and conditions contained in this coverage will apply, to the extent that such terms and conditions

provide less coverage than the terms and conditions of the applicable **underlying insurance.**

This coverage does not apply to any part of **loss** within **underlying limits**, or any related costs or expenses.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

## Coverages / Umbrella Coverage B

**Bodily Injury and Property Damage Liability Coverage**

Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **insured, loss** by reason of liability:

- imposed by law; or
- assumed in an **insured contract;**

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury.**

This coverage does not apply to any part of:

A.     **loss** to which **underlying insurance** would apply, regardless of whether or not:

       1.     **underlying insurance** is available; and
       2.     the applicable **underlying limits** have been exhausted;

B.     **loss** to which **underlying limits** apply; or

C.     any costs or expenses related to **loss** as described in paragraphs A. or B. above.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

\*\*\*

**Underlying Insurance Exclusion**

Notwithstanding anything to the contrary set forth in any other provision of this contract, this insurance does not apply to any liability or loss, cost or expense to which the terms and conditions of **underlying insurance** do not apply.

\*\*\*

**Exclusions/Umbrella Coverage B Bodily Injury**

\*\*\*

**Pollution**

A.      This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants.**

\*\*\*

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

\*\*\*

**Policy Definitions**

\*\*\*

**Insured** means a person or an organization qualifying as an **insured** in the Who Is An Insured sections of this contract.

**Loss:**

•      means damages that the **insured** becomes legally obligated to pay because of injury or damage.
•      does not include sums properly deducted for recoveries or salvage.

\*\*\*

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed

***

**Underlying insurance** means the coverages for the hazards described in the Schedule Of Underlying Insurance and the next renewal or replacement insurance thereof.

***

### Policy Exclusions Endorsement

**Biological Agents**

A.  This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **biological agents**.

***

Under Policy Definitions, the following definition is added:

**Biological Agents** means any:

A.  1. bacteria;
    2. mildew, mold or other fungi;
    3. other microorganisms; or
    4. mycotoxins, spores, other by-products of any of the foregoing:

B.  viruses or other pathogens (whether or not a microorganism); or

C.  colony group of any of the foregoing.

## C.  <u>The Underlying Lawsuit.</u>

28.  On October 20, 2022, four (4) Claimants filed the Underlying Lawsuit against Altera, Aurum and other defendants in the 127th Judicial District Court for Harris County, Texas. On January 26, 2023, these Claimants filed a First Amended Petition to add additional defendants. Also, on January 26, 2023, nine (9) additional Claimants filed a separate Original Petition in Harris County District Court based on the same allegations. These lawsuits were consolidated on February 2, 2023 and are hereinafter referred to as the Underlying Lawsuit.

29.  The Underlying Lawsuit alleges that in or around the end of August 2022, there were several instances where Claimants noticed issues with the bottled water in their office space

either smelling foul or tasting foul. As a result, some Claimants allegedly began to bring their own

bottled water to work, and at the end of the day, they would sometimes leave those bottles on their

desks overnight if they still contained water.

30.     After Claimant M.A. started bringing her own water bottles to work, M.A. allegedly

noticed those bottles smelled foul as well, "and on one occasion she and a co-worker agreed it

smelled like urine. To be sure, M.A. tested the water, and it came back positive for urine." The

operative petitions (collectively, the "Petitions") in the Underlying Lawsuit then allege as follows:

> In an effort to determine the source, M.A. purchased a hidden camera on Amazon
> and placed it on her desk. The first recording was on Monday, September 26, 2022.
> When M.A.'s phone notified her that there was motion on the camera, what she
> would witness moments later was far worse than anyone could imagine. The video
> clearly showed the nighttime janitor, Lucio Diaz, approach M.A.'s desk as if to
> clean, set the cleaning rag and cleaning bottle on the desk, unzip his pants, pull out
> his penis, grab the water bottle sitting on the desk, unscrew the cap, and begin to
> insert his penis into the water bottle (turning it upwards to ensure the water in the
> bottle touched his penis), and rub his penis on the mouth of the bottle. He then put
> the cap back on the bottle, set it back where he found it, zipped up his pants,
> grabbled the cleaning bottle and rag, and continued to "clean" the desk. Lucio Diaz
> was not phased, he was not nervous—he had done this before—and it had now
> become just a part of his daily "cleaning" ritual.

31.     Notably, the Petitions then allege:

> The consequences of these Defendants' failures are immense—Plaintiffs herein,
> after having come in contact with Lucio Diaz's urine and other bodily fluids, have
> now tested positive for incurable sexually transmitted diseases that will forever
> affect their lives.[2]

32.     Based on these allegations, the Petitions assert negligence and premises liability

claims against Altera and Aurum. In support, they allege the Building was under the control of

both Altera and Aurum as the owner and/or possessor and the manager of the Building. They also

allege that Altera and Aurum were responsible for contracting with MOH and JAM and ensuring

a safe premises.

---

[2] Emphasis added.

33.     Specifically, the Petitions allege Altera and Aurum both:

a)      Failed to employ competent janitorial services as would have been done by a person exercising ordinary care and prudence under the same circumstances;

b)      Failed to have policies and standards in place for employing competent janitorial services;

c)      Failed to complete background checks or other screening tools prior to employing janitorial services;

d)      Failed to supervise, control, regulate and/or monitor its janitorial staff to ensure that invitees were not victims of sexual assault;

e)      Failed to take adequate action or enact adequate procedures to protect invitees from sexual assault on the premises;

f)      Failed to fulfill their duties and obligations to their customers, including Plaintiffs;

g)      Failed to properly train management;

h)      Failed to properly train staff and employees;

i)      Failed to properly supervise staff and employees;

j)      Failed to have policies and procedures in place regarding the safety of invitees;

k)      Failed to properly implement policies and procedures regarding the safety of invitees;

l)      Failed to ensure compliance with policies and procedures which were in place regarding the safety of invitees;

m)      Failed to properly train management in regard to safety of invitees;

n)      Failed to properly train staff and employees in regard to the safety of invitees;

o)      Failed to ensure Lucio Diaz was legally entitled to work for MOH and/or JAM; and

p)      Failed to take appropriate action when provided notice.

---

34.     Claimants seek damages in excess of $1 million for past and future: medical expenses, physical pain and suffering and mental anguish. They also seek exemplary damages.

**D.     Altera and Aurum's requests for a defense.**

35.     Altera tendered the defense of the Underlying Lawsuit to Federal. Federal agreed to defend Altera in the Underlying Lawsuit under the Primary Policy, subject to a full reservation of rights. However, upon further investigation and review, Federal withdrew its defense of Altera and disclaimed coverage for the Underlying Suit based on the applicability to the Federal Policies' Biological Agents exclusions and Pollution exclusions.

36.     Aurum also tendered the defense of the Underlying Lawsuit to Federal pursuant to the terms of the Property Management Agreement (the "Agreement") between Altera and Aurum. Federal disclaimed any coverage owed to Aurum for the Underlying Lawsuit under the Federal Policies based on the applicability of the Biological Agents exclusions and Pollution exclusions.

## CAUSES OF ACTION

**A.     Count I – Declaratory Judgment: There is no coverage for the Underlying Lawsuit under the Primary Policy because the Biological Agents Exclusion bars coverage.**

37.     Federal repeats and re-alleges each and every allegation found within Paragraphs 1 through 36 above, as though fully set forth herein.

38.     The Petitions in the Underlying Lawsuit do not allege any **property damage**, and the only alleged **bodily injury** (i.e., injury, sickness or disease) is Claimant's contraction of an STD. However, the Primary Policy's Biological Agents Exclusion precludes coverage for the claims arising from the transmission of an STD.

39.     More specifically, the Biological Agents Exclusion precludes coverage for "damages, loss, cost or expense arising out of the actual, alleged, or threatened, pathogenic, toxic or other hazardous properties of **biological agents**." The exclusion defines **biological agents** to

mean, among other things, any "viruses or other pathogens (whether or not a microorganism)."

40.     Here, the Underlying Lawsuit alleges that an underlying defendant (Diaz) rubbed his genitals on water bottles where the Claimants would put their mouths. Claimants only claimed damages for **bodily injury** (the STD) are that Diaz contaminated the water bottles with his infected genitals and bodily fluids, which in turn allegedly caused the Claimants to contract an STD, specifically herpes (a virus), when they subsequently drank from the contaminated bottles.

41.     Because the Biological Agents Exclusion precludes coverage for the only damages for **bodily injury** (the STD) asserted in the Underlying Lawsuit, Federal is entitled to a declaration that Federal owes no duty to defend or indemnify Altera or Aurum in the Underlying Lawsuit under the Primary Policy in relation to same.

**B.**     **Count II – Declaratory Judgment: There is no coverage for the Underlying Lawsuit under the Primary Policy because the Total Pollution Exclusion bars coverage.**

42.     Federal repeats and re-alleges each and every allegation found within Paragraphs 1 through 41 above, as though fully set forth herein.

43.     The Primary Policy's Total Pollution Exclusion also applies to preclude coverage for the claims asserted in the Underlying Lawsuit. The Total Pollution Exclusion precludes coverage of **bodily injury** arising out of the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**." The Primary Policy defines **pollutants** to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including … waste[.]"

44.     Here, the Underlying Lawsuit alleges that Claimants contracted an STD after coming in contact with bottles and possibly other items that were contaminated with underlying defendant's (Diaz) infected urine and other bodily fluids. The infected urine and other bodily fluids constitute liquid human "waste", which was a "contaminant" or "irritant" and, in turn, **pollutants**, that were released, discharged or dispersed into or on the water bottles and/or any other items that

came into contact with Diaz's genitals, which infected Claimants with an STD – which is the only **bodily injury** alleged in the Underlying Lawsuit.

45.     Because the Total Pollution Exclusion precludes coverage for the only damages for **bodily injury** (the STD) asserted in the Underlying Lawsuit, Federal is entitled to a declaration that Federal owes no duty to defend or indemnify Altera or Aurum in the Underlying Lawsuit under the Primary Policy in relation to same.

**C.     Count III – Declaratory Judgment: There is no coverage for the Underlying Lawsuit under the Excess Follow-Form Coverage A Part of the Excess Policy**

46.     Federal repeats and re-alleges each and every allegation found within Paragraphs 1 through 45 above, as though fully set forth herein.

47.     The insuring agreement for the Follow-Form Coverage A part of the Excess Policy states, in relevant part, that "[t]his coverage will follow the terms and conditions of underlying insurance, unless" otherwise stated therein. Further, if the terms of this follow-form coverage conflict with the terms of the underlying insurance, "the terms and conditions in this coverage apply, to the extent that such terms and conditions provide <u>less coverage</u> than the terms and conditions of the applicable **underlying insurance**."[3]

48.     The Follow-Form Coverage A follows the form of the Primary Policy upon the exhaustion of the primary $1 million each occurrence limit and, if the terms of the Follow-Form Coverage and the Primary Policy conflict, the terms that "provide <u>less coverage</u>" apply. Thus, if the Primary Policy does not provide coverage for the Underlying Lawsuit, then the Follow-Form Coverage A also would not provide coverage for the Underlying Lawsuit.

49.     Accordingly, because the Primary Policy does not provide coverage for the

---

[3] Emphasis added.

Underlying Lawsuit for the reasons above, there is no coverage owed to Altera and Aurum under the Follow-Form Coverage A part of the Excess Policy. Therefore, Federal is entitled to a declaration that Federal owes no duty to defend or indemnify Altera or Aurum in the Underlying Lawsuit under the Excess Policy.

**D.** **Count IV – Declaratory Judgment: There is no coverage for the Underlying Lawsuit under the Excess Policy because the Biological Agents Exclusion bars coverage.**

50.     Federal repeats and re-alleges each and every allegation found within Paragraphs 1 through 48 above, as though fully set forth herein.

51.     The Excess Policy also includes an endorsement that adds the Biological Agents Exclusion to all coverage parts, including the Follow-Form Coverage and the Umbrella Coverage. This exclusion, that is almost identical to the exclusion in the Primary Policy, provides, in relevant part, that the Excess Policy does not apply to "any liability or loss, cost or expense arising out of the actual, alleged, or threatened contaminative, pathogenic, toxic or other hazardous properties of **biological agents**." The exclusion also defines **biological agents** to mean, among other things, any "viruses or other pathogens (whether or not a microorganism)."

52.     For the same reason that the Primary Policy's Biological Agents Exclusion precludes coverage for the Underlying Lawsuit, the Excess Policy's Biological Agents Exclusion similarly precludes coverage for the Underlying Lawsuit under all coverages.

53.     Accordingly, because the Excess Policy's Biological Agents Exclusion precludes coverage for the only damages for **bodily injury** asserted in the Underlying Lawsuit, Federal is entitled to a declaration that Federal owes no duty to defend or indemnify Altera or Aurum in the Underlying Lawsuit under the Excess Policy in relation to same.

**E.** **Count V – Declaratory Judgment: There is no coverage for the Underlying Lawsuit under the Excess Policy's Umbrella Coverage Part B because the Pollution Exclusion bars coverage**

54.     Federal repeats and re-alleges each and every allegation found within Paragraphs 1 through 53 above, as though fully set forth herein.

55.     The Pollution Exclusion in the Umbrella Coverage B part of the Excess Policy also precludes coverage for the claims asserted in the Underlying Lawsuit. The Pollution Exclusion precludes coverage of **bodily injury** arising out of the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**." The Excess Policy defines **pollutants** to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including … waste."

56.     For the same reason the Primary Policy's Pollution Exclusion precludes coverage for the Underlying Lawsuit, the Excess Policy's Pollution Exclusion for similarly precludes coverage for the Underlying Lawsuit under Umbrella Coverage Part B.

57.     Accordingly, Altera and Aurum are not entitled to coverage for the Underlying Lawsuit under the Umbrella Coverage B part of the Excess Policy, and thus Federal is entitled to a declaration that Federal owes no duty to defend or indemnify Altera or Aurum in the Underlying Lawsuit under the Umbrella Coverage B part of the Excess Policy in relation to same.

## PRAYER FOR RELIEF

58.     WHEREFORE, Plaintiff FEDERAL INSURANCE COMPANY prays that this Court enter a declaration and judgment in its favor finding that:

(a)     Plaintiff FEDERAL INSURANCE COMPANY has no duty to defend Defendants ALTERA EAST HOUSTON, LLC and AURUM PROPERTY PARTNERS, LLC against the claims asserted in the Underlying Lawsuits because there is no potential for insurance coverage under the terms and conditions of the Primary Policy and/or the Excess Policy; and

(b)     Plaintiff FEDERAL INSURANCE COMPANY has no duty to indemnify Defendants ALTERA EAST HOUSTON, LLC and AURUM PROPERTY PARTNERS, LLC against the claims asserted in the Underlying Lawsuits because

there is no potential for insurance coverage under the terms and conditions of the Primary Policy and/or the Excess Policy; and

(c)      FEDERAL INSURANCE COMPANY prays for such additional declaratory and other relief as this Court deems just and proper.

Respectfully submitted,

**WALKER WILCOX MATOUSEK LLP**

By: */s/ Stephen O. Venable*
       Stephen O. Venable
       State Bar of Texas No. 24056471
       S.D. Texas Bar No. 777416
       Alyssa E. Schaffer
       State Bar of Texas No. 24086200
       S.D. Texas Bar No.
       Telephone: (713) 343-6560
       1001 McKinney Street, Suite 2000
       Houston, Texas 77002
       Fax: (713) 343-6571
       Email: svenable@walkerwilcox.com
       Email: aschaffer@walkerwilcox.com
**ATTORNEYS FOR PLAINTIFF FEDERAL INSURANCE COMPANY**